By the Court, Monell, Ch. J.
There being neither hour nor place specified in the contract for the delivery of the bonds, the sellers had the whole of the *436 last day—unless the time was limited by the subsequent agreement of the parties ; and a tender of delivery at the plaintiffs’ place would have been sufficient. But the evidence shows that the parties subsequently agreed to the hour of twelve o’clock as the time, but which was afterwards extended to a quarter past two o’clock, and the office of Messerole & Trumbull as the place of deliv - ery ; and the question which is chiefly involved is the sufficiency of the tender made at the time and place so agreed upon. There are several other exceptions taken by the defendant which must fall, if the main question is decided against him. Such as his offer to explain by parol and alleged ambiguity in the contract, and his several requests to have questions of fact submitted to the jury.
If it shall be found that the bonds tendered were sufficiently ‘‘ endorsed by the State of Alabama,” then there was a fulfillment of the contract by the plaintiffs, and a failure to perform by the defendant.
There was no ambiguity in the contract.
The endorsement by a State, like the endorsement by a corporation, must be by some agent appointed by law ; and, in order to constitute such agency, the appointment and authority of the agent must be shown. In a State it need not necessarily be by the governor; any other official might be designated by the legislature ; but, under the laws of this State (1 JR. S. 164, §4, 168 ; §§ 20, 21), and probably under the laws of Alabama, it seems the instrument must be authenticated under the privy seal.
It is conceded that authority to endorse the bonds in question, in behalf of the State of Alabama, was conferred, by law, upon the governor of that State, under the privy seal. The certificate endorsed upon the bonds vefers to and recites the Acts of the general assembly of the State of Alabama, under which the bonds were issued, and then proceeds as follows :
*437 “The State of Alabama hereby endorses this bond, and becomes liable for the payment of the principal and interest thereof; the Alabama & Chattanooga Railroad Company having complied with the conditions upon which the undersigned, governor of the State of Alabama, is required, on the part of the State, to give such endorsement.
“ In witness whereof, the undersigned, governor of the State of Alabama, has hereto set his hand, and i. s. caused to be affixed hereto, the seal of the State of Alabama, this first day of January A. D., 1869.”
The contract required, and that is all it required, that the bonds should be indorsed by the State of Alabama ; and the only question which can legitimately arise, is, were these bonds indorsed by that State. The language of the contract is not indefinite, uncertain or ambiguous. It is not capable of two significations or meanings. If the bonds tendered bore the legal indorsement of the State, there can not be a doubt that it was a compliance with the contract. That there may have been two separate and different authorizations by the State, and the parties contracted for bonds indorsed in some other manner, or under some other law, would perhaps have been ground for reforming the contract. But the proof would not, I think, be competent, as explaining any alleged ambiguity in the contract itself.
The cases to which we were referred do not so fully sustain the defendant’s, position, that they should be regarded as authorities upon us. And we think they are distinguishable.
In Freeland v. Burt (1 T. R. 701), parol proof was allowed, to show that a cellar under a yard was not intended to pass under a lease of the yard over the cellar. It was a distinct appurtenant, and at the time of the demise, occupied by another tenant. The lease did not in terms specify or include the cellar, although all other parts were plainly indicated, .but the leasee claimed *438 under the maxim cu/jus est solum, ejus est usque et ad inferos. The court conceding the general rule, saw fit to apply a different rule of construction on leases made in populous cities, from that of those made in the-country. They say in London, different persons have several freeholds over the same spot; different parts of the same house are let out to different people; and that, considering the nature of the property, it was proper to show its state and condition at the time when the lease was granted.
Prima fade, the cellar would pass under a demise of the yard ; but the proof was allowed not to explain an ambiguity, but to get at the intentions of the parties, and the court, “ considering all the circumstances of this case,” relaxed the rule. The case, therefore, is not-a precedent.
The case of Cary v. Thompson (1 Daly, 35), was a demise of “two houses,” and parol evidence was offered of what was intended to be covered by the lease, the tenant claiming the yard as well as the buildings. This was held to be proper, but not on the ground of explaining any ambiguity, but for the purpose of ascertaining what was intended to pass by the demise.
The right to the evidence in the case before us, was not put upon the ground that the contract, in terms or by legal effect, was for other bonds than such as were specified in the contract, but on the ground that, the vendee had the right to claim bonds differently indorsed.
That would be introducing a new subject, and making a contract different from the one the parties reduced to writing; and would violate the fundamental rule, that written instruments can not be altered or varied by parol proof.
The case is therefore unlike French v. Carhart (1 N. Y. R. 96); Moore v. Meacham (10 Id. 207); Hinneman v. Rosenbach (39 Id. 98); Field v. Munson (47 Id. 221); *439 and other cases, cited by defendant’s counsel, which were of latent ambiguities, or of words susceptible of more than one construction.
In construing the contract in question, the court did not require the aid of any extrinsic proof. The import of the language was clear and unambiguous, and its terms would be satisfied, by proof of a legal indorsement of the bonds, by the State of Alabama.
But assuming that it would have been proper to let in the evidence, and that it had been proved that the defendant contracted for indorsements signed by the governor, as governor, would the tender have been insufficient %
The addition of the office to the governor’s signature was of no consequence whatever. It was not necessary to give validity to the instrument, or to comply with the statute authorizing the indorsement of the bonds. In the body of the instrument, and in the attestation clause, his official character and position is fully mentioned and described, and to have appended to his signature, his title of office, would have been supererogative and useless.
At or shortly prior to this transaction, some doubt as to the sufficiency of the indorsement by the governor, without the appendage of his title, had arisen among brokers in Wall-street, but which subsequently was disregarded, and it was claimed, that the defendant having in his mind the existence of that doubt, intended to contract for the purchase of bonds indorsed with such appendage.
But the evidence was, that such doubt did not affect the price or value of the bonds, nor depreciate the one kind below the other.
The rights, however, of the parties, are not affected by the existence, merely, of any doubts among brokers of the sufficiency of an indorsement.
The courts, administering the law, must determine *440 the questions which arise between individuals, and construe their contracts upon principles applicable to the ■case. And whatever law stock brokers, or the brokers’ board may make for itself, it must yield, if it is not sanctioned by the courts.
Therefore, the question in this case, is, were th bonds “indorsed by the State of Alabama ? ”
I am of opinion that they were.
From this conclusion it follows that there was a sufficient offer by the plaintiffs to perform ; and the refusal -of the defendant to accept the offer for the alleged ■defect in the indorsement, was a breach of the contract on his part.
There was no question for the jury. The actual tender was without any real dispute, except as to the character of the indorsement upon which, the refusal was put. Nor can the defendant claim anything, from the circumstance that the bonds tendered, were owned by other persons. The owners were present when the tender was made, and consented to it. Had the defendant accepted the bonds, his title to them would have been indisputable.
The sufficiency of the notice of sale of the bonds, raised no question of fact for the jury.
There was no error, therefore, in refusing the several requests of the defendant to submit the case, or any part of it, to the jury.
The judgment should be affirmed.
Curtis, •!., concurred.